USCA1 Opinion

 

 United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 95-2073 MICHAEL K. EAGAN Plaintiff - Appellant, v. UNITED STATES OF AMERICA, Defendant - Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Joseph L. Tauro, U.S. District Judge] ___________________ ____________________ Before Stahl, Circuit Judge, _____________ Aldrich, Senior Circuit Judge, ____________________ and Lynch, Circuit Judge. _____________ ____________________ Peter L. Banis with whom Ley & Young, P.C., Lawrence P. ________________ _____________________ ____________ Heffernan, H. Bissell Carey, III, and Robinson & Cole were on brief _________ ______________________ ________________ for appellant. Bridget M. Rowan, Attorney, Tax Division, U.S. Department of _________________ Justice, with whom Loretta C. Argrett, Assistant Attorney General, ___________________ Donald K. Stern, United States Attorney, Gary R. Allen, and Kenneth L. _______________ _____________ __________ Greene, Attorneys, Tax Division, U.S. Department of Justice, were on ______ brief for appellee. ____________________ March 29, 1996 ____________________ STAHL, Circuit Judge. Michael K. Eagan appeals STAHL, Circuit Judge. ______________ from the grant of summary judgment in favor of the government in his action seeking a refund of taxes paid on an early withdrawal from his former company's retirement plan. In a separate and previous tax refund suit, Eagan and the Internal Revenue Service ("IRS") stipulated that in 1987 Eagan, a life insurance salesman, did not qualify as a statutory employee of the company sponsoring the retirement plan. In the present suit, Eagan argues that his participation in the plan violated the requirement that the plan operate for the exclusive benefit of employees, thus disqualifying the plan for tax purposes and rendering contributions to the plan taxable.  With ingenuity, Eagan argues that because the contributions were taxable when made, his withdrawals from the plan cannot be taxed, and therefore he is due a refund. Conveniently for Eagan, the applicable statute of limitations now bars the assessment of tax on most of the contributions to the plan. Thus, if Eagan's argument is accepted, he would have the best of both worlds: the ability to avoid tax on most of the original contributions and on the subsequent withdrawals. The district court, unmoved by Eagan's plea, rejected that result. It ruled that the Commissioner of Internal Revenue had the discretion to ignore any -2- 2 disqualifying effect on the plan of Eagan's participation as a non-employee. Accordingly, the court granted summary judgment for the IRS on Eagan's refund claim, and this appeal ensued. We now affirm the district court, although on a different ground. We hold that the duty of consistency bars Eagan from taking a position in one year to his advantage, and then later, after correction is barred by the statute of limitations, taking a contrary position to his further advantage. I. I. __ BACKGROUND BACKGROUND __________ During the relevant tax years, Eagan was a life insurance agent, earning commissions from a number of insurers. He had agreed, however, in a "Career Contract for Full-Time Agents" with Massachusetts Mutual Life Insurance Company ("Mass Mutual"), that solicitation of Mass Mutual policies would be his "principal business activity." The Internal Revenue Code classifies a "full-time life insurance salesman" as an employee1 of the insurer for whom they sell full time, subject to employment tax withholding and eligible to participate in the insurer's tax-  ____________________ 1. Individuals deemed to be employees by statute, whether or not they fit the common law definition of employee, are often called "statutory employees," and various IRS forms, instructions, and regulations refer to them that way. See, ___ e.g., IRS Form W-2 Wage and Tax Statement; IRS Instructions ____ for Schedule C Profit or Loss From Business.  -3- 3 deferred retirement plans. See I.R.C. 3121(d)(3)(B), ___ 7701(a)(20). Mass Mutual maintains retirement plans for its employee-agents, and the IRS determined2 the plans were qualified for tax-favored treatment under section 401(a) of the Internal Revenue Code (26 U.S.C., hereafter "I.R.C."). Based on Eagan's representation in the "Career Contract for Full-Time Agents," Mass Mutual treated Eagan as a statutory employee and contributed portions of his compensation to a qualified retirement plan, the Mass Mutual Agents 401(k) Plan ("the 401(k) plan"). Under this arrangement, taxation was deferred on the portion of Eagan's compensation that Mass Mutual contributed to the 401(k) plan and on any income earned on those contributions, see I.R.C. 401(k), 402(a), ___ and 501(a), but tax would eventually be due when Eagan withdrew funds from the plan, see I.R.C. 402(a), 72(t). ___ Mass Mutual contributed to the 401(k) plan on Eagan's behalf from 1981 until 1992, when his contract with Mass Mutual was terminated. On his tax returns, Eagan consistently treated himself as a statutory employee, and treated the 401(k) plan as qualified, excluding from income the contributions made on his behalf in 1987, 1988, and 1989. In 1989, Eagan withdrew $4,682 from the 401(k) plan, and he reported and paid income tax on that withdrawal on his 1989  ____________________ 2. In 1986, the IRS issued a determination letter to Mass Mutual finding the retirement plan at issue here to be qualified for tax benefits under I.R.C. 401(a). -4- 4 tax return, filed in August 1990. Because Eagan was not yet 59 years old when he withdrew the funds, he was also liable for, and paid, the ten percent additional tax on early distributions under I.R.C. 72(t). In April 1992, Eagan filed an amended tax return for 1989, claiming that he was not subject to any tax on the withdrawal from the 401(k) plan. The IRS disallowed Eagan's refund claim, and Eagan responded by filing the instant tax refund suit in the United States District Court for the District of Massachusetts, claiming a refund of $1,755.81 for the taxes on the 1989 withdrawal from the 401(k) plan. II. II. ___ EAGAN'S REFUND CLAIM EAGAN'S REFUND CLAIM ____________________ The rationale for Eagan's refund claim is somewhat complicated and rather brash. We spell it out in detail. The linchpin of the claim is Eagan's contention that he was not a full-time insurance agent for Mass Mutual during 1987, 1988, and 1989. In an earlier tax refund suit, Eagan sought to recover FICA tax3 withheld from his Mass Mutual compensation in 1987 and later years, on the theory that he was not subject to FICA tax as a non-employee. Eagan v. _____ United States, No. 92-10786-T (D. Mass. filed Apr. 3, 1992) _____________  ____________________ 3. "FICA" is the acronym for the Federal Insurance Contribution Act, which requires the withholding from wages of an employment tax to fund Social Security benefits. I.R.C. 3101. -5- 5 ("Eagan I"). Eagan and the IRS stipulated in Eagan I that _______ _______ Eagan was not a full-time agent for Mass Mutual in 1987 and thus not a statutory employee of Mass Mutual under I.R.C.  3121(d)(3)(B). As a non-employee, Eagan was not subject to FICA withholding on his Mass Mutual compensation, and accordingly he received a refund of his 1987 FICA tax in Eagan I; the IRS also issued an administrative refund of his ________ FICA taxes for 1988-1992. Eagan's position in this suit is that the stipulation in Eagan I that he was not a Mass Mutual employee _______ also had implications for his participation in the Mass Mutual 401(k) plan. He argues that under the statutory scheme, a qualified tax-deferred retirement plan must inure to the exclusive benefit of the employees of the plan sponsor. See I.R.C. 401(a)(2). Because he was not an ___ employee in 1987, he claims, his participation in the plan violated this "exclusive benefit rule," rendering the plan not qualified for tax benefits. See id. Eagan then argues ___ ___ that because the plan was not qualified in 1987, Mass Mutual's contributions to the plan on his behalf were taxable to Eagan as would be other compensation for his services. See I.R.C. 402(b). Moreover, income earned on contributed ___ funds would also be taxed when earned, not tax-deferred. See ___ I.R.C. 61(a)(15). He concludes that if the contributions and income thereon had been taxed when earned, there would be -6- 6 no further tax due when "after-tax" funds were eventually withdrawn. Thus, Eagan contends he is due a refund on the taxes he paid in connection with his early withdrawal in 1989. Since the statute of limitations4 bars the IRS from assessing tax on most of the contributions Mass Mutual made to the plan on Eagan's behalf, Eagan, if successful in this claim, would avoid tax completely -- both on contributions to the plan and on withdrawals from the plan.5 The district court rejected Eagan's refund claim in a terse one-page order. The court pointed out that the IRS had previously issued a determination letter that the Mass Mutual 401(k) plan was qualified, and although the Commissioner "has authority to issue a corrective determination [that the plan was no longer qualified because of Eagan's participation] with retroactive application, she has not done so in her discretion." Finding no abuse of discretion, the court deferred to the Commissioner's decision, and consequently granted summary judgment for the government.  ____________________ 4. A three-year statute of limitations, I.R.C. 6501(a), would apply to Eagan's non-payment of tax on the contributions to the 401(k) plan, as we explain in part III of this opinion. 5. Under his theory, Eagan would, however, owe tax on any contributions and income earned on his plan assets in tax years within the three-year statute of limitations. -7- 7 III. III. ____ ANALYSIS ANALYSIS ________ Our review of summary judgments is plenary. Levy ____ v. FDIC, 7 F.3d 1054, 1056 (1st Cir. 1993). We are free to ____ affirm the district court's ruling on any ground supported in the record. Id.  ___ The district court granted summary judgment for the government, ruling that the Commissioner of Internal Revenue had the discretion not to revoke her prior determination that the Mass Mutual 401(k) plan was a qualified plan, and thus effectively to ignore the disqualifying effect, if any, that Eagan's participation may have had on the plan. The district court, however, did not cite any case, statute, or regulation as authority for its ruling. The court apparently accepted the government's main argument in its memorandum supporting summary judgment, but the authorities cited by the government are not directly on point. While the Commissioner probably has the authority to consider a 401(k) plan qualified in spite of the erroneous participation of one non-employee, we need not reach that question in order to affirm the summary judgment. Nor do we reach the question whether Eagan's participation rendered the plan disqualified under the statutory framework, but we note our considerable skepticism of this argument. We believe there is a more direct basis on which to affirm the decision below. -8- 8 The duty of consistency estops Eagan from now seeking a refund by asserting that his participation in the 401(k) plan was improper. As we recently observed, the "`duty of consistency' prevents a taxpayer who has already had the advantage of a past misrepresentation -- in a year now closed to review by the government -- from changing his position and, by claiming he should have paid more tax before, avoiding the present tax." Lewis v. Commissioner, 18 _____ ____________ F.3d 20, 26 (1st Cir. 1994) (citing Beltzer v. United States, _______ _____________ 495 F.2d 211, 212-13 (8th Cir. 1974) and Jacob Mertens, Jr., The Law of Federal Income Taxation 60.05 (1992)). The duty __________________________________ of consistency is a type of equitable estoppel, also known as "quasi-estoppel." Id., 18 F.3d at 26; Mertens, supra,  ___ _____ 60.05. The duty of consistency arises when the following elements are present: "(1) a representation or report by the taxpayer; (2) on which the Commission[er] has relied; and (3) an attempt by the taxpayer after the statute of limitations has run to change the previous representation or to recharacterize the situation in such a way as to harm the Commissioner." Herrington v. Commissioner, 854 F.2d 755, 758 __________ ____________ (5th Cir. 1988), cert. denied, 490 U.S. 1065 (1989). When _____ ______ these requirements are met, "the Commissioner may act as if the previous representation, on which he relied, continued to be true, even if it is not. The taxpayer is estopped to assert the contrary." Id. The elements of the duty of ___ -9- 9 consistency are present in this case. First, there was a misrepresentation by the taxpayer. Eagan represented on his 1987, 1988, and (original) 1989 tax returns that, as a full- time insurance agent for Mass Mutual, he was a statutory employee eligible to participate in the Mass Mutual 401(k) plan. Eagan made that representation to the IRS by: (1) submitting with his return for each of those years his Mass Mutual Form W-2 indicating that he was a statutory employee; (2) excluding each year from gross income the compensation contributed to the 401(k) plan; (3) excluding from gross income the earnings on his account balance in the plan; and (4) treating the withdrawal from the 401(k) plan as a premature withdrawal from a qualified plan and paying the associated tax and penalty. Eagan also represented to Mass Mutual in his "Career Contract for Full-Time Agents" that his "principal business activity" was solicitation of Mass Mutual business, and Mass Mutual relied on that representation in issuing Eagan's W-2 forms and by contributing to the 401(k) plan on his behalf. We now know, based on the stipulation in Eagan I, that these representations were incorrect. _______ Eagan argues that his misrepresentations to the IRS were about a matter of law, not fact, and that therefore the duty of consistency does not arise. In Lewis, we noted that _____ the duty of consistency "seems to apply when the earlier _____ taxpayer position amounts to a misstatement of fact, not of -10- 10 law." 18 F.3d at 26 (emphasis added). But in Lewis, we did _____ not examine the fact-or-law issue in any depth, and we certainly made no holding on that point. See id. We now ___ ___ adopt the approach of the Fifth Circuit in Herrington that __________ the duty of consistency applies to "a mixed question of fact and law, concerning which the taxpayer[] had more information than the Commissioner at the time the initial representations were made." 854 F.2d at 758. The question whether Eagan was a statutory employee of Mass Mutual is primarily factual. The inquiry depends on the facts of Eagan's particular situation, including the time and effort Eagan devoted to Mass Mutual relative to other insurers and any non-insurance business pursuits. See 26 ___ C.F.R. 31.3121(d)-1(d)(2) and -1(d)(3)(ii). In this case, as in Herrington, the question was not a pure question of __________ law, but rather "at best a mixed question of fact and law." Id. Therefore, we reject Eagan's argument that the duty of ___ consistency does not apply to his misrepresentation. Second, the IRS relied on Eagan's misrepresentation, accepting his returns as filed and allowing the statute of limitations to run. See id. There is ___ ___ no suggestion that the IRS was unreasonable in accepting Eagan's returns at face value or that the IRS should have known that Eagan was not a full-time life insurance salesman for Mass Mutual. -11- 11 Third, Eagan has recharacterized himself as a non- employee in 1987, 1988, and 1989, and thus entitled to a refund for the taxes on his 1989 withdrawal, but the statute of limitations bars the IRS from taxing most of the contributions made to the 401(k) plan and the earnings thereon. Section 6501(a) of the Internal Revenue Code provides that taxes must be assessed within three years after the return is filed. Eagan states in his brief that for the government to prevail on the duty of consistency defense, it must show that, at the time of Eagan's recharacterization, the statute barred reassessment of his 1987 income taxes.6 He concedes, and we agree, that it is immaterial that his 1988 and 1989 taxes were still open to reassessment when he filed an amended 1989 return on April 14, 1992, recharacterizing himself as a non-employee in order to claim a refund.7 Because Eagan filed his 1987 tax return on  ____________________ 6. In a letter attached to Eagan's amended 1989 return, Eagan asserted that "during the years in which amounts were deducted from commissions earned by him and paid by the Massachusetts Mutual Life Insurance Company, he did not meet the definition of `full-time insurance salesman' as contained in Section 7701(a)(20)." The record indicates that Eagan began to participate in the 401(k) plan in 1981. Thus, it appears that the IRS is also barred from reassessing years before 1987 when Eagan may have improperly participated in the 401(k) plan. However, the parties apparently have focused on 1987 because Eagan and the IRS stipulated in Eagan _____ I that he failed to meet the definition of "full-time _ insurance agent" in 1987. 7. Conceivably, the relevant time of recharacterization was when Eagan filed his claim for a FICA tax refund, which was eventually litigated as Eagan I. Arguably, the FICA claim _______ -12- 12 September 26, 1988, the three-year statute on 1987 taxes ran out more than six months before Eagan recharacterized his employment status in his amended 1989 return. As a result, the IRS is barred from taxing the contributions made in 1987 and earlier years, and therefore the third element of the duty of consistency is satisfied. Eagan argues that the six-year statute of limitations of I.R.C. 6501(e) applies, not the three-year limitation of section 6501(a). We reject that argument. The six-year limitation contained in section 6501(e) applies where the taxpayer omits an item from gross income that exceeds twenty-five percent of the gross income stated in the return. Eagan asserts that his 1987 gross income was $4,432, and since the omission in that year exceeded twenty-five percent of that amount, the six-year limitation should apply. But Eagan's argument fails to recognize that "gross income" of a trade or business is specially defined in I.R.C.  6501(e)(1)(A)(i) as "the total of the amounts received or accrued from the sale of goods or services." In 1987, Eagan was taxed as a trade or business. He reported $73,180 of  ____________________ put the IRS on notice of Eagan's recharacterization at an earlier point than did the income tax refund claim. Eagan does not make this argument, however, and the record does not indicate the date when Eagan filed his FICA refund claim with the IRS. The Eagan I refund suit was filed in district court _______ on April 3, 1992, only eleven days before the income tax refund claim at issue here, and that eleven day difference does not alter the outcome. -13- 13 income, earned both as a statutory employee8 of Mass Mutual and as an independent contractor for other insurance companies, on Schedule C of Form 1040, entitled "Profit or Loss from Business." Schedule C was the proper place to report that income, and by reporting it as business income, Eagan was able to deduct a variety of business-related expenses such as office rent, supplies, wages for employees, etc., that are generally not deductible by a taxpayer who is not engaged in a trade or business. Eagan clearly fell within the I.R.C. 6501(e)(1)(A)(i) special definition of "gross income" for a trade or business, and his gross income was therefore $73,180 for the limited purpose of applying the statute of limitations. Although the record is somewhat unclear as to the total amount omitted from his 1987 taxable income due to his improper participation in the 401(k) plan, it appears to be less than $5,000, and in any event there is no assertion by Eagan that it is more than twenty-five percent of $73,180. Contrary to Eagan's assertion, the three-year statute of limitation of section 6501(a) applies. IV. IV. ___ CONCLUSION CONCLUSION __________  ____________________ 8. The instructions to Schedule C require a taxpayer who received income as a statutory employee to report that income _________ on Schedule C, rather than on line 7 of Form 1040 where a typical employee's salaries and wages are reported. -14- 14 We conclude that all of the elements of the duty of consistency are met in this case. Having earlier misrepresented himself as a statutory employee in order to enjoy tax-deferred retirement plan contributions, Eagan is estopped from now claiming he was never an employee in order to enjoy tax-free withdrawals.9 As the Eighth Circuit aptly put it: It is no more right to allow a party to blow hot and cold as suits his interest in tax matters than in other relationships whether it be called estoppel, or a duty of consistency, or the fixing of a fact by agreement, the fact fixed for one year ought to remain fixed in all its consequences. Beltzer, 495 F.2d at 212-13. Or, to paraphrase the hackneyed _______ aphorism, Eagan cannot retain his cake and consume it as well. The decision of the district court is affirmed. ________  ____________________ 9. We recognize that Eagan's 1989 withdrawal was subject to the ten percent additional tax on early distributions, a tax that would not apply if Eagan was taxed on the original contributions as if made to a non-qualified plan. In our view, however, it is not inequitable that Eagan should be subject to this tax. Eagan enjoyed the economic benefit of deferring for many years the tax on the plan contributions, earning income on the portion of the contributed funds that would otherwise have been paid to the IRS. -15- 15