PUBLISH

UNITED STATES COURT OF APPEALS

**Filed 11/13/96**

TENTH CIRCUIT

WILLIAM LEFEVER, Qualified Heir- )
Transferee of the Assets of the Estate of )
Blanche Knollenberg, BETTY LOU )
LEFEVER, Qualified Heir-Transferee of )
the Assets of the Estate of Blanche )
Knollenberg, )
)
     Petitioners-Appellants, )
)
v. )     No. 95-9022
)
COMMISSIONER OF )
INTERNAL REVENUE, )
)
     Respondent-Appellee. )

Appeal from the United States Tax Court
(T.C. No. 19915-92)

Submitted on the briefs:

Patrick J. Regan of Regan & McGannon, Wichita, Kansas, and
Juandell D. Glass, Norman, Oklahoma, for Petitioners-Appellants.

Gilbert S. Rothenberg and Andrea R. Tebbets, Attorneys, Tax Division, Department of
Justice, Washington, D.C., for Respondent-Appellee.

Before BALDOCK, McWILLIAMS, and RONEY[*] Circuit Judges.

---

[*]     The Honorable Paul H. Roney, Senior Circuit Judge, United States Court of
Appeals for the Eleventh Circuit, sitting by designation.

BALDOCK, Circuit Judge.

In a federal estate tax return, Petitioners valued several parcels of inherited farmland under the special use valuation election, 26 U.S.C. § 2032A, which reduced the valuation of the land from its fair market value. Seven years after they filed the election, Respondent determined that they were not putting the land to a qualifying use as required to maintain the benefits of the election, and assessed additional taxes against Petitioners.

Petitioners filed a challenge in Tax Court, contending that they were never actually entitled to the special use valuation election and that a three-year statute of limitations barred the assessments. The Tax Court ruled that the assessments were timely under a provision of the Code extending the limitations period for three years after Respondent has notice that the property is no longer being put to a qualifying use. Most significantly, the Tax Court ruled that Petitioners were precluded under the doctrine of the duty of consistency from denying the initial validity of the special use valuation election.

Petitioners appeal, challenging the Tax Court's rulings as to the liability issues and the calculation of the additional tax. We exercise jurisdiction under 26 U.S.C. § 7482 and, finding no reversible error, affirm.

## I. Background

### A. Section 2032A

The Tax Code imposes a general estate tax on the transfer of the taxable estate of every decedent who is a resident or citizen of the United States. 26 U.S.C. § 2001. The

2

estate's executor is responsible for paying this tax. Id. § 2002. The estate tax under § 2001 is generally based on the fair market value of the taxable property, valued at its highest and best use. See Brockman v. Commissioner, 903 F.2d 518, 519 (7th Cir. 1990).

Section 2032A permits certain property used in family farming and closely-held businesses to be valued on the basis of its actual use at the time of the decedent's death rather than on the basis of its highest and best use. Whalen v. United States, 826 F.2d 668, 669 (7th Cir. 1987). With § 2032A, Congress intended to protect the heirs of family farms and small family businesses from being forced to sell the farms or businesses to pay federal estate taxes. Id. To take the election, the property must be qualified real property; the decedent must have been a citizen or resident of the United States; the executor of the estate must file the election under § 2032A; and each person having an interest in the property must sign and file a personal liability agreement under § 2032A(d)(2). 26 U.S.C. § 2032A(a)(1).

Qualified real property is real property located in the United States and is property which passes from the decedent to a qualified heir. As of the date of death, the decedent or a qualified member of the decedent's family must have been putting the property to a qualifying use. Id. § 2032A(b)(1). To qualify for the special use valuation election, the property must constitute statutory percentages of the value of the decedent's gross and adjusted estate. See id. § 2032A(b)(1) (describing the 50 percent test and the 25 percent test). Also, the decedent or member of the decedent's family must materially participate

3

in putting the property to a qualifying use for five of eight years before the date of death. Id. § 2032A(b)(1)(C)(ii); Estate of Sherrod v. Commissioner, 774 F.2d 1057, 1062-63 (11th Cir. 1985) (discussing material participation), cert. denied, 479 U.S. 814 (1986).

A qualifying use includes the decedent or a qualified member of the decedent's family using the property as a farm or in a trade or business. 26 U.S.C. § 2032A(b)(2); Brockman, 903 F.2d at 521-22. Under either use, the family must use the property in an active trade or business. Brockman, 903 F.2d at 522; Martin v. Commissioner, 84 T.C. 620, 627 (1985), aff'd, 783 F.2d 81 (7th Cir. 1986). Cash rental of the property to a nonfamily member is not a qualifying use. Brockman, 903 F.2d at 522; Williamson v. Commissioner, 974 F.2d 1525, 1532-33 (9th Cir. 1992); H.R. Rep. No. 1380, 94th Cong, 2d Sess. 23, reprinted in 1976 U.S.C.C.A.N. 3356, 3377 ("The mere passive rental of property will not qualify.").

To maintain the benefits of the special use valuation election, qualified heirs must, for 10 years following the date of death, continue to put the property to the same qualifying use to which it was put at the date of the decedent's death. 26 U.S.C. § 2032A(c)(1)(B); Williamson, 974 F.2d at 1530. If a qualified heir sells the property or ceases to use it for the same qualifying use during that period, the heir becomes personally liable for the imposition of an additional estate tax, designed to recapture an amount proportional to the  tax saving gained by taking the special use valuation election. 26 U.S.C. § 2032A(c); Martin v. Commissioner, 783 F.2d 81, 82 (7th Cir. 1986). Impor-

4

tantly, this additional estate tax under § 2032A(c) is distinct from the general estate tax imposed on the transfer of a decedent's estate under § 2001.

## B. Procedural History

Petitioners William and Betty Lou LeFever, together with their son Joe LeFever, inherited six parcels of farmland in Butler County, Kansas, from Decedent Blanche Knollenberg, who died in July 1983. Petitioners' accountant prepared the corresponding federal estate tax return based on information provided by Petitioners. Petitioners filed the estate tax return on April 24, 1984. Upon the accountant's advice, Petitioners filed a special use valuation election under § 2032A, which reduced by $585,078 the taxable value, normally based on the fair market value, of five of the six parcels of farmland owned by Decedent. 26 U.S.C. § 2032A. The sixth parcel clearly did not qualify for the special use election and is not part of this appeal. As attachments to the estate tax return filed on Decedent's behalf, Petitioners filed appraisals of parcels 1 through 6, the § 2032A notice of election, a statement of material participation, and agreements to the application of the special use valuation election signed by Petitioners and Joe LeFever. In the agreements, Petitioners and Joe LeFever consented to personal liability for any additional taxes imposed as a result of a sale of the inherited property or the cessation of a qualifying use. See id. § 2032A(c)(5). Also they expressly recognized that the agreements were a condition precedent to gaining the benefits of the election. See id. § 2032A(d)(2).

5

In July 1990, the Internal Revenue Service sent Petitioners a questionnaire as part of a program to evaluate whether taxpayers were properly using special use valuation elections. Petitioners returned the questionnaire to the IRS in early August 1990. Based on Petitioners' answers, an IRS estate tax attorney mailed Petitioners a second letter, in October 1990, requesting additional information, including information on whether portions of the property subject to the special use valuation election were being cash rented to nonfamily members. Petitioners responded to the letter in February 1991. They reported that portions of parcels 2 through 5 were being cash rented.

In separate notices of deficiency, dated July 22, 1992, Respondent determined that Petitioners were liable for a deficiency in additional estate tax under § 2032A because certain acres of parcels 2 through 5 were being cash rented to nonfamily members. Respondent issued the notices some seven years after Petitioners filed the estate tax return.

In September 1992, Petitioners filed this challenge to the assessments in Tax Court. Before the Tax Court, Petitioners argued that the special use valuation election was invalid at the date of its filing because parcels 2 through 5 had never been put to a qualifying use. In fact, parcels 2 through 5 had been cash rented to nonfamily members at the time of Decedent's death and continued to be cash rented after her death. Petitioners argued that the estate tax return should have notified Respondent that the election was invalid, and, thus, that the tax assessments under § 2032A(c) were barred by the Code's

6

three-year statute of limitations. Petitioners also argued that Respondent had not pleaded an affirmative defense, such as estoppel, in response to their position that the limitations period had expired.

In contrast, Respondent argued that the assessments were timely under a provision of the Code extending the limitations period for assessing additional taxes under § 2032A for three years after Respondent has notice that a taxpayer has ceased putting specially-valued property to a qualifying use. 26 U.S.C. § 2032A(f). Respondent contended that she first received notice that parcels 2 through 5 were not being put to a qualifying use after receiving Petitioners' responses to the first questionnaire on August 13, 1990, and, thus, that the assessments were timely as they were issued on July 22, 1992.

Four months after trial, Respondent moved in the Tax Court for leave to amend her answer to conform to the evidence presented at trial. Specifically, Respondent sought to raise for the first time the affirmative defense of quasi-estoppel or the duty of consistency.[1] The Tax Court found that the parties had tried the matter of the duty of consistency by consent and granted the motion for leave. The Tax Court subsequently denied Petitioners' motion for reconsideration.

After receiving the parties' post-trial briefs, the Tax Court ruled that the assessments were timely under § 2032A(f). The Tax Court found that Petitioners' estate tax

---

[1] The doctrine is known either as quasi-estoppel or the duty of consistency. Eagan v. United States, 80 F.3d 13, 17 (1st Cir. 1996). We will refer to it as the duty of consistency.

7

return, special use valuation election, and supporting documents, were insufficient to put Respondent on notice that the election was invalid. The Tax Court further found that Respondent first had notice when she received Petitioners' answers to the initial questionnaire on August 13, 1990. The Tax Court ruled that Petitioners were precluded under the duty of consistency from denying the validity of the special use valuation election or that the property had been put to a qualifying use at the date of Decedent's death. Thus, the Tax Court ruled that Petitioners were liable for the additional taxes. It also disallowed Petitioners' request for a deduction from the value of the gross estate in the amount of the attorneys fees incurred in the suit.

## II. Discussion

On this appeal, Petitioners challenge: (1) the Tax Court's granting of leave to amend to conform to the evidence, (2) its application of the doctrine of the duty of consistency, (3) its application of the statute of limitations, (4) its rulings and findings regarding the calculation of the additional estate taxes, and (5) its ruling that Petitioners were not entitled to deduct the attorneys fees incurred in defending against the tax assessments.

### A. Leave to Amend

Petitioners contend that the Tax Court erred in affording Respondent leave to amend her answer to conform to the evidence four months after the close of trial. The Tax Court permitted Respondent to amend her answer to raise for the first time the issue

of the duty of consistency. Under the duty, Petitioners were precluded from denying the validity of the special use valuation election or that the property subject to the election was initially put to a qualifying use.

When issues not raised by the pleadings are tried by the implied consent of the parties, the issues must be treated as if they had been raised by the pleadings. Tax Ct. R. 41(b). At any time, the Tax Court may allow amendment of the pleadings to cause them to conform to the evidence and to raise these issues. Id. An amendment to conform to the pleadings may be permitted when it clearly appears from the record that an issue not raised in the pleadings has been tried with the express or implied consent of the parties. Hardin v. Manitowoc-Forsythe Corp., 691 F.2d 449, 456 (10th Cir. 1982) (discussing Rule 15(b)); Radio Corp. of America v. Radio Station KYFM, Inc., 424 F.2d 14, 17 & n.3 (10th Cir. 1970) (same).[2]

---

[2] Because the portion of Tax Court Rule 41(b) applicable in this case closely parallels Rule 15(b) of the Federal Rules of Civil Procedure, see Church of Scientology of California v. Commissioner, 83 T.C. 381, 469 (1984), aff'd, 823 F.2d 1310 (9th Cir. 1987), cert. denied, 486 U.S. 1015 (1988), we will look to precedent under Rule 15(b) in considering the Tax Court's granting of leave to amend. Cf. Commissioner v. Finley, 265 F.2d 885, 888 (10th Cir. 1959) (interpreting predecessor of Tax Court Rule 41(b) in a manner consistent with Rule 15(b)), cert. denied, 361 U.S. 834 (1959). Compare Tax Ct. R. 41(b)(1) ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. The Court, upon motion of any party at any time, may allow such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues. . . .") with Fed. R. Civ. P. 15(b) ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence may be made upon motion of

The parties provide implied consent when they recognized that the issue entered the case at trial and acquiesced to the introduction of evidence on that issue without objection. Hardin, 691 F.2d at 457. Even when a party does not consent and objects at trial that evidence is outside the scope of the pleadings, amendment may still be allowed unless the objecting party satisfies the court that he or she will be prejudiced by the amendment. Id. The party opposing the amendment will be found to have consented to the trial of an issue when that party presents evidence on the issue at trial. Id. But when evidence claimed to show trial by consent is relevant to a separate issue already in the case, and there is no indication that the party presenting the evidence intended to raise a new issue by its introduction, the Tax Court has the discretion to deny the amendment, id., and the moving party cannot raise a new theory of relief after the close of trial. Cook v. City of Price, Carbon County, Utah, 566 F.2d 699, 702 (10th Cir. 1977). The determination of whether an issue was tried with the consent of the parties is within the discretion of the trial court, whose decision is reviewed for an abuse of discretion. Hardin, 691 F.2d at 457; Ellis v. Arkansas Louisiana Gas Co., 609 F.2d 436, 439 (10th Cir. 1979), cert. denied, 445 U.S. 964 (1980).

We hold that the Tax Court did not abuse its discretion in finding that the issue of the duty of consistency was tried by consent. The duty of consistency applies where a taxpayer makes a representation or report, on which the Commissioner has relied, and

any party at any time, even after judgment.").

10

with respect to which the taxpayer attempts to change his or her position after the running of the statute of limitations. See Continental Oil Co. v. Jones, 177 F.2d 508, 512 (10th Cir. 1949), cert. denied, 339 U.S. 931 (1950); Eagan v. United States, 80 F.3d 13, 17 (1st Cir. 1996). In her opening argument at trial, Respondent argued that Petitioners had affirmatively applied for favorable treatment under the special use valuation election in the estate tax return and made certain representations in support of the election, that the IRS had accepted the return and afforded Petitioners the advantageous treatment, and that Petitioners now wished to be released from the conditions attending the special use valuation election. Petitioners understood the opening statement as raising the issue of estoppel and objected. In spite of the objection, however, evidence was subsequently introduced on the issue. For example, both parties explored the circumstances surrounding Petitioners' filing of the estate tax return and the special use valuation election and how Respondent interpreted them. Both parties and the Tax Court itself questioned Petitioner William LeFever about the special use valuation election, his knowledge of the consequences of the election, and his intentions in taking it. Moreover, no one disputes that Petitioners made the election in filing the estate tax return or that Respondent accepted the election as valid until it received Petitioners' answers to the questionnaires in 1990. In contrast to their position at the time of the filing of the estate tax return, Petitioners now contend that the special use valuation election was invalid because the property was not put to a qualifying use at or after the time of death.

11

Petitioners emphasize that they argued in a separate motion to the Tax Court, made on the morning of trial, that Respondent had not pleaded any affirmative defenses, including estoppel. Petitioners thus argue that they did not consent to the trial of the duty of consistency. Again, however, even when a party does not consent and objects at trial that evidence is outside the scope of the pleadings, amendment may still be allowed unless the objecting party satisfies the court that he or she will be prejudiced by the amendment. Tax Ct. R. 41(b)(2); Hardin, 691 F.2d at 456. Petitioners have not shown that they were prejudiced within the meaning of Hardin. Petitioners merely contend that "[T]here is no doubt the case would have been tried differently" and that they would have moved for a continuance had they known that the issue of the duty of consistency was to be tried. Petitioners do not articulate how the case would have been tried differently or what a continuance would have accomplished. Petitioners argued in their motion to reconsider leave to amend filed in the Tax Court that they would have called the IRS examining officer and group manager who reviewed the special use valuation election at the time it was filed to show that Respondent should have realized that the election was invalid at the time of filing. However, such testimony would have been relevant to the issue of when Respondent first received notice that the election was invalid. The issue of such notice was first raised by paragraph 6 of Respondent's answer, which alleges that

12

the additional assessments were timely under the extension provision of § 2032A(f).[3]

Thus, Petitioners had sufficient opportunity to prepare for and litigate the issue of the Respondent's notice regarding the validity of the election.

Admittedly, Respondent delayed until four months after trial to seek leave to amend its answer to add an affirmative defense it should have raised in the pleadings before trial. See Sundstrand Corp. v. Commissioners, 96 T.C. 226, 349 (1991). Respondent offered no explanation for the delay. Moreover, it should have been apparent that the issue of the duty of consistency was important when, in their pretrial brief, Petitioners contended the special use valuation election was invalid from the date of its filing and attempted to disavow the election. We, however, will not substitute our judgment for that of the Tax Court's under the abuse of discretion standard, see United States v. Wright, 826 F.2d 938, 943 (10th Cir. 1987), and the record in this case does not show that the Tax Court abused its discretion in affording Respondent leave to amend under Tax Rule 41(b).

## B. The Duty of Consistency

Petitioners also contend that the Tax Court misapplied the doctrine of the duty of consistency to preclude them from denying the validity of the special use valuation

---

[3] Section 2032A(f) provides that an assessment for an increase in estate taxes under § 2032A(c) triggered by a disposition of the property or a cessation of a qualified use may be made within three years "from the date the Secretary is notified" of such disposition or cessation.

13

election or that parcels 2 through 5 had been put to a qualifying use at the time of Decedent's death. Petitioners argue that the Tax Court did not apply the proper elements of the duty of consistency, that a taxpayer cannot be bound by a representation that is a mistake of law, and that they cannot be bound by representations made in the estate tax return because they are not the same taxpayer as the one on whose behalf the estate tax return was filed.

1.

The duty of consistency has developed along two lines. One line has treated the duty as strictly analogous to traditional equitable estoppel and has required a showing that the taxpayer made an intentional misrepresentation or a wrongful misleading silence in obtaining favorable tax treatment. See, e.g., Lignos v. United States, 439 F.2d 1365, 1368 (2d Cir. 1971); Crosley Corp. v. United States, 229 F.2d 376, 380-81 (6th Cir. 1956); Piarulle v. Commissioner, 80 T.C. 1035, 1044 (1983). The other line has liberated the application of the doctrine from the traditional requirements of equitable estoppel and has only required a showing of a representation made by a taxpayer in obtaining favorable tax treatment, and not an intentional falsehood or wrongful misleading silence. See, e.g., Eagan v. United States, 80 F.3d 13, 17 (1st Cir. 1996); Herrington v. Commissioner, 854 F.2d 755, 758 (5th Cir. 1988), cert. denied, 490 U.S. 1065 (1989); Arkansas Best Corp. v. Commissioner, 83 T.C. 640, 659 (1984), aff'd in part and rev'd in part on other issues, 800 F.2d 215 (8th Cir. 1986), aff'd, 485 U.S. 212 (1988).

14

Petitioners rely on Uinta Livestock Corp. v. United States, 355 F.2d 761 (10th Cir. 1966), to support their position that only a strict application, akin to traditional estoppel, of the duty of consistency is proper in this circuit. In Uinta, we addressed the two lines of the doctrine's development and expressly selected the strict interpretation. Id. at 766-67 ("[W]e believe after weighing the matter carefully that we must subscribe to the ordinary rules of equitable estoppel."). Petitioners contend that the Tax Court misapplied the doctrine because it did not make a factual finding that Petitioners had made an intentional misrepresentation or a wrongful misleading silence in making the special use valuation election.

Although neither party brought it to our attention and we apparently overlooked it in Uinta, we believe the issue of the proper elements the duty of consistency is controlled by our earlier decision in Continental Oil Co. v. Jones, 177 F.2d 508, 512 (10th Cir. 1949), cert. denied, 339 U.S. 931 (1950). In Continental Oil, the corporate taxpayer reported receiving a number of shares of common stock, items of taxable income, and valued them at $1 per share in its 1927 tax return. In 1928, the IRS audited affiliated companies who had reported receiving identical shares in 1927 and determined that the proper cost basis for the shares was $244.31 per share instead of $1 per share. In 1941, the corporate taxpayer sold its shares and reported a loss based on a cost basis of $244.31 per share. We affirmed the IRS's disallowance of the loss, holding that the taxpayer was precluded from shifting its position to the higher cost basis on the ground that it had

15

avoided income tax in 1927 by reporting the shares at $1 per share. We held that a taxpayer is bound by the cost basis which it reported in receiving a tax benefit and could not later take advantage of a loss on the sale of the shares by reporting the true cost basis of the shares, "even though all the technical elements of estoppel [were] not present." Continental Oil, 177 F.2d at 512. We precluded the taxpayer from contradicting its previous representation without finding that it had made an intentional misrepresentation or a wrongful misleading silence in the 1927 tax return. We noted that the valuation error in 1927 could have been a simple mistake of fact. Id.

Because one panel of this court is bound by the precedent of an earlier panel absent en banc reconsideration or a superseding contrary decision of the U.S. Supreme Court, In re Smith, 10 F.3d 723, 724 (10th Cir. 1993), cert. denied, 115 S. Ct. 53 (1994), the Continental Oil decision takes precedence over the Uinta decision, at least to the extent Uinta may be read to require a showing of an intentional misrepresentation or a wrongful misleading silence by a taxpayer in obtaining favorable tax treatment. See Haynes v. Williams, 88 F.3d 898, 900 & n.4 (10th Cir. 1996) ("[W]hen faced with an intra-circuit conflict, a panel should follow earlier, settled precedent over a subsequent deviation therefrom."). Moreover, dispensing with this culpability factor fosters better tax administration and reduces unpredictability otherwise produced by the decisions attempting to assess relative blame between the taxpayer and the IRS. See Steve R. Johnson, The Taxpayer's Duty of Consistency, 46 Tax. L.Rev. 537, 556-59 (1991)

16

(canvassing numerous cases in criticizing the incorporation of culpability factors into the duty of consistency). It is a better rule to preclude a taxpayer from changing his or her position based on the taxpayer's having received a tax benefit on the basis of a specific representation made to the IRS in an earlier year than to require a showing of an intentional misrepresentation or wrongful misleading silence by the taxpayer. See Elbo Coals, Inc. v. United States, 763 F.2d 818, 821 (6th Cir. 1985) (disagreeing with Uinta rule requiring an intentional misrepresentation); cf. United States v. Matheson, 532 F.2d 809, 819 (2d Cir.) ("Courts routinely hold that one gaining governmental benefits on the basis of a representation or asserted position is thereafter estopped from taking a contrary position in an effort to escape taxes."), cert. denied, 429 U.S. 823 (1976); Union Pacific R.R. Co. V. United States, 847 F.2d 1567, 1570 (Fed. Cir. 1988) ("When a party with knowledge . . . of the material facts does what amounts to a recognition of the transaction as existing . . . or abstains for a considerable length of time from impeaching it, so that the other is reasonably induced to suppose that it is recognized, there is acquiescence, and the transaction, though it be originally impeachable, becomes unimpeachable."); R.H. Stearns Co. v. United States, 291 U.S. 54, 61-62 (1934). The relative fault of the parties is less

important in a case in which the public, and not just the two parties, has an interest.[4]  See

Johnson, supra, at 557.

2.

Petitioners point out the general rule that a taxpayer will not be precluded from

changing his or her position with respect to a representation that is a mistake of law as

opposed to a mistake of fact.  See Eagan, 80 F.3d at 17; Herrington, 854 F.2d at 758; cf.

Continental Oil, 177 F.2d at 512.  Petitioners contend that the representations made in

taking the special use valuation election that the properties qualified for the election under

§ 2032A are conclusions of law to which the duty of consistency cannot be applied.

While the determination of whether particular property qualifies for the special use

valuation election involves issues of law, the validity of Petitioners' election with regard

to parcels 2 through 5 turns on the facts regarding the actual use of the parcels.  The

relevant rule of law is undisputed.  Cash rental of farmland to a nonfamily member does

not constitute a qualified use.  Brockman, 903 F.2d at 522.  As the Tax Court noted, the

facts regarding the actual use of the parcels were peculiarly within the knowledge of

Petitioners.  At best, Petitioners' representations involve a mixed question of law and fact

---

[4]    The taxpayer's intentions in making a given representation may, however, be relevant in other contexts, such as in assessing the propriety of penalties.  See 26 U.S.C. § 6651(a)(1) (imposing penalties for an improper report on a tax return unless the misreport is due to "reasonable cause and not due to willful neglect").  In this case, Respondent stipulated that Petitioners were not liable for the penalties under § 6651(a)(1).

to which the duty of consistency may be applied. Eagan, 80 F.3d at 17; Herrington, 854 F.2d at 758.

3.

Next, Petitioners argue that the duty of consistency does not apply because Petitioners are not the taxpayers who made the representations underlying the special use valuation election. Estate tax is imposed on the transferred estate of a decedent. 26 U.S.C. § 2001(a). The tax under § 2001(a) must be paid by the executor of the estate. Id. § 2002. In contrast, the additional tax imposed in the event of a disposition of a piece of qualified real property or the cessation of a qualifying use is imposed on the qualified heirs. Id. § 2032A(c)(5).

Some authority exists for Petitioners' position that an heir should not be bound by representations of the estate's executor. See Ford v. United States, 276 F.2d 17 (Cl. Ct. 1960) (refusing to require heirs to use as the basis in inherited stock the valuation selected by the executor where the heirs were minors who resided in Brazil and had no relevant knowledge); but see Hess v. United States, 537 F.2d 457 (Cl. Ct. 1976) (requiring under the duty of consistency the heirs to use as the basis for inherited stock the value reported by the executor even though the heirs were minors and were not personally involved in reporting the value), cert. denied, 430 U.S. 931 (1977). However, the duty of consistency is usually understood to encompass both the taxpayer and parties with sufficiently identical economic interests. See Johnson, supra, at 549-50 & n.73. In this case,

19

Petitioner William LeFever was the executor of Decedent's estate. He filed the special use valuation election. 26 U.S.C. § 2032A(d)(1). He and Petitioner Betty Lou LeFever provided the information on which their accountant based the election. They both signed a consent form to the taking of the election. Lastly, as the qualified heirs of parcels 2 through 5, Petitioners had an economic interest in reducing the value of the taxable estate in 1984. Petitioners had sufficient privity of interest with the estate's executor for the application of the duty of consistency.

In sum, the Tax Court properly applied the duty of consistency. The doctrine applies where a taxpayer makes a representation or report, on which the Commissioner has relied, and with respect to which the taxpayer attempts to change his or her position after the running of the statute of limitations. See Continental Oil, 177 F.2d at 512; Eagan, 80 F.3d at 17; Herrington, 854 F.2d at 758. In this case, Petitioners represented that parcels 2 through 5 qualified for the special use valuation election in the estate tax return and supporting documents. Herrington, 854 F.2d at 758. At trial, William LeFever testified that he made the election to gain favorable tax treatment. Respondent relied on the representation and afforded Petitioners the benefits of the election and allowed the statute of limitations to run. Id. Lastly, Petitioners seek now to disavow the election after the running of the limitations period in order to avoid paying the additional estate taxes. Id.

4.

Finally, Petitioners argue that the Tax Court erred in not ruling that Respondent was also bound under the duty of consistency. They contend that Respondent made a representation that the use to which parcels 2 through 5 were being put before Decedent's death was a qualifying use by accepting the special use valuation election without protest or audit at the time of its filing in April 1984. Because Petitioners continued to use the parcels in the same way after Decedent's death, Petitioners argue that Respondent is bound by her "representation" and cannot now claim that the use is not a qualifying use.

Aside from the general problems associated with applying a doctrine like estoppel against the government, see, e.g., Penny v. Giuffrida, 897 F.2d 1543, 1546 (10th Cir. 1990), Respondent's acquiescence to Petitioners' election under the facts of this case does not constitute the sort of representation to which Respondent may be bound. As discussed below, Respondent did not have notice of the invalidity of the special use valuation election until it received the answers to the questionnaires provided by Petitioners in August 1990 and February 1991.

## C. Statute of Limitations

Petitioners contend that the Tax Court erred in failing to rule that the assessments for additional estate tax under § 2032A(c) were untimely under the Code's general three-year statute of limitations set forth in 26 U.S.C. § 6501(a). Petitioners point out that Decedent's estate tax return was filed April 24, 1984, and that the assessments at issue

were dated July 22, 1992. Again, the Tax Court ruled that the assessments were timely under § 2032A(f). This section provides that the period for the assessment of any additional tax under § 2032A(c) is extended for three years from the date Respondent is notified that qualified real property is disposed of or ceases to be used for a qualifying use.[5]

Petitioners first contend that § 2032A(f) does not take precedence over the general limitations period of § 6501(a) as it applies to "any tax imposed by this title." 26 U.S.C. § 6501(a). Petitioners point out that the additional taxes under § 2032A(c) are not listed in the exceptions to § 6501(a), see id. § 6501(c) (listing exceptions), and that Respondent conceded at trial that the additional assessments at issue would be barred but for § 2032A(f). However, this contention is meritless as § 2032A(f)(2) specifically states, "such additional tax may be assessed before the expiration of such 3-year period notwith-standing the provisions of any other law or rule of law which would otherwise prevent such assessment." Id. § 2032A(f)(2) (emphasis added).

---

[5]     The subsection provides:

(f) Statute of Limitations.--If qualified real property is disposed of or ceases to be used for a qualified use, then--
> (1) the statutory period for the assessment of any additional tax under subsection (c) attributable to such disposition or cessation shall not expire before the expiration of 3 years from the date the Secretary is notified . . . of such disposition or cessation . . . .

26 U.S.C. § 2032A(f).

Second, Petitioners contend that § 2032A(f) does not apply under the facts of this case because the section applies by its terms only to additional assessments imposed in the case of the disposition of qualified real property or the cessation of a qualifying use. Petitioners again point out that parcels 2 through 5 were never put to a qualifying use and were never qualified real property. Thus, they contend that the extension under § 2032A(f) was never triggered. This argument, however, is simply a variation on Petitioners' attempt to disavow the validity of the special use valuation election and to deny that parcels 2 through 5 were put to a qualifying use at the date of Decedent's death. Again, Petitioners are precluded from making this argument under the duty of consistency.

Third, Petitioners contend that the three-year extension provided under § 2032A(f) expired on April 24, 1987, because the estate tax return, the special use valuation election, and the supporting documents, were sufficient to put Respondent on notice that the special use valuation election was invalid on the day the estate tax return was filed. The Tax Court specifically found that these documents would not have put Respondent on notice that the special use valuation election was invalid. We accept this factual finding regarding notice unless it is clearly erroneous and will not reverse unless after a review of the record we are left with a definite and firm conviction that a mistake has been made. See Riley v. Commissioner, 649 F.2d 768, 773 (10th Cir. 1981).

23

Petitioners chiefly contend that the statement of material participation filed with the estate tax return should have put Respondent on notice that the special use valuation election was invalid at the date of its filing. See 26 U.S.C. § 2032A(b)(1)(C). Petitioners argue that James Kaufman, an IRS estate tax attorney, testified that the statement of material participation was sufficient to raise questions about the validity of the special use valuation election and that he would have probably selected it for audit had he been the one reviewing it at the time it was filed. Characterizing Kaufman's testimony as uncontradicted, Petitioners contend that the Tax Court erred in not finding it conclusive.

Petitioners also contend that the face of the estate tax return shows various facts fatal to the election. They contend that the return shows facts regarding the nonuse of parcels 1 and 2 after 1966 and parcels 3 and 4 after 1980, the sparse use of parcel 5 by Petitioners, the cash rental of certain parcels to nonfamily members, and the failure of the claimed qualified real property to constitute the required proportions of the gross and adjusted estate.

In contrast, Respondent points out the inconsistency of the argument that the very documents by which Petitioners intended to show the IRS that they were entitled to the special use valuation election are also supposed to constitute notice that the election was invalid at the time of filing. Both William LeFever and his accountant, who prepared the estate tax return, testified that they intended the estate tax return to show that the election was proper. Also, Respondent points out that in the 48-page estate tax return, tenancies

24

are only mentioned four times, and none of these references specifically state that the specially valued parcels were being cash rented to nonfamily members. Also, Respondent notes that much of Petitioners' argument as to the notice provided by the estate tax return is bolstered by either testimony or documentary evidence which was not included in the estate tax return.

We have reviewed the estate tax return, the special use valuation, and the supporting documents, including the statement of material participation. On the whole, these materials manifest the intent of the executor and qualified heirs, who signed agreements to the claiming of the election, to represent to Respondent that the special use valuation election was proper. The references to facts which would suggest that the election was improper are sparse and ambiguous. For example, none of the references to tenancies in the return unambiguously report that the parcels were being cash rented to nonfamily members. Moreover, in spite of Petitioners' characterization of Kaufman's testimony as uncontradicted, the estate tax return and the supporting documentation can serve as a basis for discounting his testimony that he "probably" would have selected the return for an audit. A review of the record does not leave us with a definite and firm conviction that the Tax Court erred in finding that the return and supporting materials would not have notified Respondent that the election was invalid.

Given that the Tax Court did not clearly err in its finding on the notice issue, it properly ruled on the limitations issue. The estate tax return was filed in April 1984.

Respondent sent Petitioners the first questionnaire regarding the election in July 1990. Petitioners answered the questionnaire on August 13, 1990. As the Tax Court found, this response first notified Respondent that parcels 2 through 5 were not being put to a qualifying use. Respondent then issued the notices of deficiency on July 22, 1992. Because the notices were issued within the three-year period set forth in § 2032A(f), they were timely.

## D. Valuation Issues

First, Petitioners contend that the Tax Court erred in precluding Petitioners from introducing evidence at trial that Respondent erroneously determined the taxable value of the portions of parcels 2, 3, and 4 subject to the additional tax under § 2032A(c). Petitioners argue that they planned to show that Respondent's calculations were so erroneous as to be arbitrary and capricious and that Respondent should have had the burden of proving the proper taxable value.

At trial, Petitioners questioned the IRS's estate tax attorney about his calculation of the additional estate taxes. The Tax Court interrupted the questioning, considering the exact calculation of the amount of the additional taxes to be irrelevant to the issue of Petitioners' liability for the additional taxes. The Tax Court stated that Petitioners could present evidence relevant to the tax calculation in any proceedings under Tax Court Rule 155.[6] The Tax Court subsequently afforded the parties an opportunity to schedule an evidentiary hearing in connection with the Rule 155 proceedings, and neither party did so. We see no reversible error in the Tax Court's actions.

Second, Petitioners contend that the Tax Court erred in finding that no evidence on the record supported a lesser fair market value for the 110 acres of pasture land in

---

[6] After deciding the issues in a tax case, the Tax Court may conduct separate proceedings under Tax Court Rule 155 to allow the parties to submit computations pursuant to the Tax Court's determination of the issues, showing the correct amount of the deficiency, liability, or overpayment to be entered. See Tax Ct. R. 155; Bankers Pocahontas Coal Co. v. Burnet, 287 U.S. 308, 312-13 (1932).

parcel 2 which were subject to additional taxes.  We accept the Tax Court's valuation of the 110 acres unless they are clearly erroneous.  Holl v. Commissioner, 54 F.3d 648, 650 (10th Cir. 1995).

Parcel 2 consists of the 110 acres of pasture land and 50 acres of cultivated land. The Tax Court accepted Respondent's calculations of the fair market value for the 110 acres.  Respondent calculated the fair market value of the 110 acres as $102,437.50. Most importantly, Respondent used the average per acre market value figure of $931.25 per acre derived from the total number of acres on parcel 2.[7]

Petitioners contend that the Tax Court erred in accepting Respondent's calculation because pasture land is worth less than cultivated land.  Petitioners argue that the fair market value calculation of the pasture land should be reduced to reflect this fact.

The Tax Court properly rejected Petitioners' contention because the fair market value of the parcel for the purpose of the additional estate tax under § 2032A(c) reflects the property's highest and best use.  26 U.S.C. §§ 2032A(c), 2031(a); Brockman, 903 F.2d at 519.  In contrast, the special use valuation reflects the value of the property as

---

[7]     Specifically, Respondent used the $149,000 total fair market value of parcel 2 divided by the parcel's 160 total acres for an average value of $931.25 per acre. Respondent then multiplied the average per acre value of $931.25 by the 110 acres of pasture land for a fair market value of $102,437.50.  Respondent used the total fair market value for parcel 2 reported on the estate tax return and supported by a report from Petitioners' appraiser.  Petitioners' appraiser only reported the total fair market value for parcel 2, based on comparable sales, and did not report any difference in value between pasture land and cultivated land.

28

farmland. 26 U.S.C. § 2032A(e)(7). The fact that the most feasible farming use for the 110 acres is apparently as pasture land is not relevant to its valuation at its highest and best use in this case. In the estate tax return, Petitioners' appraiser stated that the highest and best use for parcel 2 was its use as a subdivision. Petitioners have not shown that the Tax Court clearly erred in basing its valuation on the average per acre fair market value of the total acres in parcel 2.

### E. Attorneys Fees

As their last contention, Petitioners argue that the Tax Court erred in not allowing a deduction from the value of the gross estate for the attorneys fees incurred in contesting the assessments of additional taxes. See 26 U.S.C. § 2053(a)(2) (allowing certain deductions for administration expenses). The Tax Court disallowed the deduction on the grounds that the additional taxes assessed by Respondent under § 2032A(c) against Petitioners are distinct from any taxes assessable against the estate under § 2001, which imposes the general estate tax against the decedent's estate, and that Petitioners' challenge to the additional taxes was not essential to the proper settlement of Decedent's estate. See Reilly v. Commissioner, 76 T.C. 369 (1981).

Section 2053(a)(2) allows deductions in the calculation of the value of the taxable estate for administrative expenses, including attorneys fees, incurred in calculating the estate tax imposed by § 2001. 26 U.S.C. 2053(a) ("For purposes of the tax imposed by section 2001 . . . ."). Again, § 2001(a) imposes the general tax on the transfer of a

decedent's estate. In contrast with this estate tax, § 2032A(c) imposes an additional estate tax on qualified heirs personally. 26 U.S.C. § 2032A(c)(5); H.R. Rep. No. 1380, 94th Cong, 2d Sess. 26-27, reprinted in 1976 U.S.C.C.A.N. 3356, 3380-81. As Respondent points out, the tax imposed by § 2001 on Decedent's estate is not at issue in this case. In fact, Respondent acknowledges that the statute of limitations has since run on any taxes which might have been assessed against the estate. The Tax Court did not err in denying a deduction for attorneys fees.

### III. Conclusion

The Tax Court did not abuse its discretion in affording Respondent leave to amend her answer to conform to the evidence in order to raise the issue of the duty of consistency based on its finding that the parties had tried the issue by consent. Likewise, the Tax Court properly applied the duty of consistency to preclude Petitioners from denying the validity of the special use valuation election or that the property was put to a qualifying use at the time of Decedent's death. Also, the Tax Court committed no reversible error with regard to the calculation of the additional estate taxes. Lastly, the Tax Court properly denied Petitioners a deduction for the attorneys fees incurred in defending against the additional estate tax imposed against Petitioners personally. Accordingly, the judgment of the Tax Court is affirmed.

AFFIRMED.