T.C. Memo. 2004-229

UNITED STATES TAX COURT

MITCHELL F. SKRIZOWSKI, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9652-02L.                    Filed October 7, 2004.

<u>Aline H. Lotter</u>, for petitioner.

<u>Carina J. Campobasso</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Pursuant to section 6330(d),[1] petitioner
seeks review of respondent's determination to leave the notices
of liens for petitioner's 1986, 1987, 1988, 1989, and 1992 tax
liabilities in place.

---

[1]  Unless otherwise indicated, all section references are to
the Internal Revenue Code, and all Rule references are to the Tax
Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time he filed the petition, petitioner resided in Manchester, New Hampshire.

Petitioner's Activities Before 1990

During and prior to 1989, petitioner was in the business of buying, selling, and renting real estate. In 1989, the number of vacancies in petitioner's real estate increased. Petitioner sold his home and exhausted all of his cash, but was unable to pay the mortgages on the real estate he owned. The real estate was foreclosed upon. Around this time, petitioner and his wife separated.

Respondent's Assessments and Attempt To Collect Taxes

Around 1990, petitioner received a letter from the Internal Revenue Service (IRS) that stated he owed $250,000 in taxes for 1987. Around September 1991, Revenue Officer Boyd Chivers was assigned to collect taxes from petitioner and Lafayette Oil Co.[2] Mr. Chivers's concerns were that petitioner was not filing returns and was not declaring money that he earned. At that

_____

[2] Petitioner purchased Lafayette Oil Co. for $50,000, and, in 1989, sold it to Robert Hicks. Mr. Hicks paid petitioner $25,000 and promised to pay petitioner $5,000 per month for 5 years. Mr. Hicks never made any of the $5,000 payments. Respondent's collection actions concerning taxes owed by Lafayette Oil Co. are not in issue in this proceeding.

time, petitioner was not filing tax returns because he was no longer earning any money.

Mr. Chivers told petitioner that he had to file a 1989 income tax return.  Petitioner advised Mr. Chivers that he had no books or records, and he did not recall how much money he earned in 1989.  Mr. Chivers instructed petitioner to estimate on the high side and report an amount large enough to cover the amount petitioner had earned.  Mr. Chivers informed petitioner that he could go to jail if he did not file a return for 1989.

Petitioner prepared an income tax return for 1989 (1989 return).  The only entries on the 1989 return were:  Petitioner listed two of his children as dependents; line 7, Wages, salaries, tips, etc., has $1 million written in and scribbled out; line 12, Business income, lists $5 million; line 31, adjusted gross income, lists $5 million; page 2 is blank except for petitioner's signature, the date is listed as "9/19/91", and petitioner's occupation is listed as unemployed; and the Schedule C, Profit or Loss From Business, lists $5 million of gross receipts or sales, no cost of goods sold, and no expenses. Petitioner listed $5 million in income on the 1989 return because he was drunk, he was intimidated by Mr. Chivers, and he did not want to go to jail.

Petitioner gave Mr. Chivers the 1989 return. It was obvious to Mr. Chivers that petitioner did not earn the amount of money reported on the 1989 return and that he was drunk.

On April 7, 1992, respondent assessed income tax, penalties, and interest with respect to petitioner's 1986, 1987, and 1988 tax years. Petitioner had the opportunity to petition the Tax Court for 1986, 1987, and 1988, but he chose not to because he lacked the money to contest the proposed deficiencies.

On May 11, 1992, based upon the 1989 return filed on October 4, 1991, respondent assessed $1,398,726 in income tax, a $349,681.50 penalty, and $397,559.58 in interest with respect to petitioner's 1989 tax year.

On September 4, 1992, respondent filed notices of Federal tax liens regarding petitioner's 1986, 1987, 1988, and 1989 tax years (1992 liens). Although the IRS tried to collect these taxes from petitioner, Mr. Chivers concluded that petitioner had no assets, placed petitioner's case in uncollectable status, and closed the case.

On September 20, 1993, based upon a return filed by petitioner for 1992 listing $1,799.18 in adjusted gross income, respondent assessed $75.89 in income tax, a $2.27 penalty, and $2.33 in interest with respect to petitioner's 1992 tax year.

Petitioner's Activities During the Mid-1990s

In the mid-1990s, petitioner obtained employment renovating buildings. Old friends unable to sell their properties offered those properties to petitioner. The properties were placed into one of three trusts (three trusts): Pangia Trust, Joshua Irrevocable Trust, or Good Apple Trust. The trustees were a friend of petitioner's family and/or one of petitioner's children. The beneficiaries were petitioner's three children.

Petitioner's Disability and Deteriorating Health

Petitioner has been ruled permanently and totally disabled. He collects approximately $1,400 per month of disability income from Social Security.

In 1999, petitioner was diagnosed with hepatitis C. He has been hospitalized for jaundice, and he has cirrhosis of the liver. Petitioner's prognosis was that he had approximately a 75 percent chance of developing cancer within 5 years. Petitioner wanted to resolve his problems with the IRS while he was still somewhat healthy.

Petitioner's Submission of an Offer-In-Compromise

On or about March 16, 2000, petitioner submitted an offer-in-compromise (OIC) seeking to compromise his 1986, 1987, 1988, 1989, and 1992 Federal income tax liabilities for $5,000. Petitioner submitted the OIC on the grounds of doubt as to collectability. Offer Specialist John Mahalaris was assigned to investigate the OIC.

On January 10, 2001, Mr. Mahalaris spoke with Elizabeth Lorsbach, an attorney at the law firm of Lotter and Bailin, P.C. She advised him that petitioner was drunk when he submitted the 1989 return, that Mr. Chivers told petitioner that he had to file a return for 1989 before Mr. Chivers could do anything to help him, that petitioner did not receive $5 million, and that petitioner was destitute.

On January 24, 2001, Mr. Mahalaris was advised by Mr. Chivers that petitioner's case was put in uncollectable status. Mr. Chivers told Mr. Mahalaris that he (Mr. Chivers) did not believe that the $5 million listed on the 1989 return was real in the first place.

On April 17, 2001, Mr. Mahalaris filed four notices of Federal tax lien identifying the three trusts and Pangia Asset Management Corp. as petitioner's nominees[3] (nominee liens). The nominee liens covered the income tax years 1986, 1987, 1988, 1989, and 1992.[4] The total unpaid balance listed on the nominee liens was $6,143,276.23, of which $4,341,486.84 was attributable to 1989. That same day, respondent sent petitioner a notice pursuant to section 6320 advising him of the filing of the

---

[3] We use the term "nominee" throughout the opinion for convenience only. We make no findings regarding whether the three trusts or the corporation were nominees of petitioner.

[4] One of the nominee liens mistakenly refers to 1996 instead of 1986.

nominee liens and his right to a hearing (hearing notice).  At the time he received the hearing notice, petitioner was receiving chemotherapy treatments.

On May 9, 2001, Mr. Mahalaris rejected petitioner's OIC.

Section 6330 Hearing and Determination

On May 17, 2001, petitioner timely filed a Form 12153, Request for a Collection Due Process Hearing, regarding his 1986,[5] 1987, 1988, 1989, and 1992 tax years (hearing request). In the hearing request, petitioner:  Disputed the nominee status of the trusts and corporation; noted that the IRS had placed petitioner in uncollectable status; disputed the amount respondent claimed petitioner owed because he lacked an opportunity to dispute the amount earlier; and noted that the $5 million figure listed on the 1989 return was not correct.   On July 20, 2001, petitioner's case was assigned to Settlement Officer Michael G. Blais.  On January 14, 2002, Mr. Blais made the following entry into his case activity record: "Notwithstanding nominee issues there still appears to be a reasonable collection potential figure far below the full balance".

_____

[5]  The hearing request lists "12/31/96" as one of the tax periods in issue; however, this appears to be either a typographical error that respondent treated as referring to 1986 or based upon respondent's error contained in the nominee liens.

On January 29, 2002, Mr. Blais conducted a section 6330 hearing (hearing) with petitioner's representatives--Ms. Lotter and Scott O'Connell. Mr. Blais never spoke to petitioner. At the hearing, Mr. Blais considered the 1989 return. On its face, the 1989 return appeared unusual to Mr. Blais. Mr. Blais advised petitioner's representatives that he could not adjust or abate a tax without evidence as to the amount of petitioner's true income for 1989. Petitioner's representatives advised Mr. Blais that petitioner had no books or records for 1989 and also disagreed with the nominee liens.

The focus of the hearing, however, was whether petitioner's case could be settled through an OIC; i.e., petitioner proposed an OIC as a collection alternative. Petitioner suggested a compromise consisting of a percentage of the equity of the properties held in the three trusts. Mr. O'Connell stated that he could provide Mr. Blais with information that would help Mr. Blais determine a settlement figure (via an OIC). Petitioner was willing and prepared to present any documents Mr. Blais needed.

On January 29, 2002, Mr. Blais made the following entry into his case activity record: "best case scenario on nominee leaves about 77K collectible * * * Ms. Lotter to determine if t/p can raise add'l funds for OIC in projected settlement range with hazards figured in".

On March 29, 2002, Mr. O'Connell provided documents to Mr. Blais. Mr. Blais concluded that an OIC was possible, but additional investigation was necessary and needed to be done at a "lower level". Mr. Blais did not feel comfortable determining a settlement figure. That same day, Mr. Blais wrote petitioner's attorneys:

> I can state with reasonable certainty that sufficient resources do not appear to exist to liquidate the full amount of the delinquent tax liability. Although, an Offer in Compromise appears to be a likely method of resolving the dispute; the information submitted so far is not adequate to quantify an amount or a range of amounts that appear acceptable. In order to fully exhaust this method of resolution I propose to return the Offer in Compromise portion of my case to the Compliance function so they can fully develop and quantify an equity/asset position. If an agreement cannot be reached at that level the Offer may receive additional consideration from Appeals.

The letter concluded: "The complex nature and numerous transactions regarding the Offer in Compromise warrant additional investigative work by the Compliance function prior to a resolution acceptable by both parties." Mr. Blais sent the OIC to the "OIC group" for additional investigation.

On April 10, 2002, Mr. Blais prepared an Appeals case memorandum. In the Appeals case memorandum, Mr. Blais wrote: "There is no evidence that the taxpayer had 5 million dollars to purchase trust property and finance the business dealings" and that bankruptcy proceedings "did not uncover any assets or cash that might have been available to start the type of entities now

uncovered." The Appeals case memorandum concluded: "Hazards to the governments' [sic] position appear to exist and there appears to be some grounds for settlement * * * Any percentage based settlement is clearly beyond the reach of the taxpayer based on the total balance of tax due and his relative inability to pay."

On May 9, 2002, respondent issued a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 to petitioner regarding his 1986, 1987, 1988, 1989, and 1992 tax years (notice of determination). In the notice of determination, respondent determined that the liens filed on or about April 9, 2001,[6] were appropriate and "will remain in full force and effect until satisfied or unenforceable by law."

In discussing the OIC as a collection alternative, the attachment to the notice of determination (the attachment) noted: "While it appears clear that the taxpayer does not have the ability to liquidate the full amount of $7,000,000 a reasonable amount could not be calculated" and "additional investigation is required to determine an acceptable offer amount." The attachment further noted that the OIC was returned to the compliance function for additional research and calculation. The attachment also stated that petitioner disputed the $5 million figure listed on the 1989 return, respondent had previously coded

---

[6] It is unclear why the date was listed as Apr. 9, 2001, instead of Apr. 17, 2001.

petitioner's account "currently not collectible", and petitioner disputed that the trusts and corporation are the nominees of petitioner.

On September 25, 2002, respondent mailed petitioner's OIC back to him. The OIC is stamped in the upper left hand corner "RETURNED". A letter from Philip W. Sullivan, OIC Group Manager, explained the reason the IRS was "returning" petitioner's OIC:

> The offer in compromise can not [sic] be considered since the taxpayer has petitioned the Tax Court for review of the liabilities that are subject of the offer in compromise. The collection potential analysis that must be performed in evaluating the taxpayer's offer may change based on the outcome of the Tax Court case.

Petitioner's transcripts of account for 1986, 1987, 1988, 1989, and 1992 list the OIC as "rejected" on this same date.

OPINION

I.    Sections 6320 and 6330--General Legal Principles

Section 6320 provides that the Secretary shall furnish the person described in section 6321 with written notice (i.e., the hearing notice) of the filing of a notice of lien under section 6323. Section 6320 further provides that the taxpayer may request administrative review of the matter (in the form of a hearing) within a 30-day period. The hearing generally shall be conducted consistent with the procedures set forth in section 6330(c), (d), and (e). Sec. 6320(c).

Pursuant to section 6330(c)(2)(A), a taxpayer may raise at the section 6330 hearing any relevant issue with regard to the

Commissioner's collection activities, including spousal defenses, challenges to the appropriateness of the Commissioner's intended collection action, and alternative means of collection.  Sego v. Commissioner, 114 T.C. 604, 609 (2000); Goza v. Commissioner, 114 T.C. 176, 180 (2000).  If a taxpayer received a statutory notice of deficiency for the years in issue or otherwise had the opportunity to dispute the underlying tax liability, the taxpayer is precluded from challenging the existence or amount of the underlying tax liability.  Sec. 6330(c)(2)(B); Sego v. Commissioner, supra at 610-611; Goza v. Commissioner, supra at 182-183.

When the Commissioner issues a determination regarding a disputed collection action, section 6330(d) permits a taxpayer to seek judicial review with the Tax Court or a U.S. District Court, as is appropriate.  If the underlying tax liability is properly at issue, we review that issue de novo.  Sego v. Commissioner, supra at 610; Goza v. Commissioner, supra at 181.  If the validity of the underlying tax liability is not at issue, we review the Commissioner's determination for an abuse of discretion.  Sego v. Commissioner, supra at 610.

II.  Standard of Review

A.   Petitioner's 1986, 1987, 1988, and 1992 Tax Years

Petitioner had the opportunity to petition the Court for 1986, 1987, and 1988; however, he chose not to.  Accordingly,

petitioner cannot contest the underlying liabilities for 1986, 1987, and 1988.  Sec. 6330(c)(2)(B); Sego v. Commissioner, supra; Goza v. Commissioner, supra at 182-183.  Additionally, petitioner did not question his underlying liability for 1992.  Accordingly, we shall review respondent's determinations for 1986, 1987, 1988, and 1992 for an abuse of discretion.

B.    Petitioner's 1989 Tax Year

Petitioner did not receive a statutory notice of deficiency for 1989.  Respondent assessed petitioner's 1989 tax based on the 1989 return.  Petitioner raised the issue of his underlying liability for 1989 in his hearing request and at the hearing.

Respondent argues that the underlying tax liability for 1989 is not at issue as petitioner did not raise it in the petition. We conclude that the language of the petition is broad enough to raise the issue of petitioner's underlying liability for 1989. In the petition, petitioner stated that he listed $5 million on the 1989 return under duress and that $5 million did not accurately reflect his income for 1989.  Furthermore, even if it was not raised in the petition, the issue was tried by consent.[7]

---

[7]  When issues not raised by the pleadings are tried by implied consent of the parties, the issues shall be treated as if they had been raised in the pleadings.  Rule 41(b).  Parties satisfy Rule 41(b) when they introduce the issue at trial and acquiesce in the introduction of evidence on that issue without objection.  LeFever v. Commissioner, 103 T.C. 525, 538-539 (1994), affd. 100 F.3d 778 (10th Cir. 1996); see also Hardin v. Manitowoc-Forsythe Corp., 691 F.2d 449, 456 (10th Cir. 1982).

Rule 41(b).  Accordingly, petitioner's underlying liability for 1989 is properly before the Court, and we review that issue de novo.[8]  See <u>Sego v. Commissioner</u>, <u>supra</u>; <u>Goza v. Commissioner</u>, <u>supra</u>.  We shall review the remainder of respondent's determination for 1989 for an abuse of discretion.  <u>Sego v. Commissioner</u>, <u>supra</u>.

## III. <u>Underlying Tax Liability</u>

The evidence establishes that petitioner did not receive $5 million in business income in 1989.

## IV.  <u>Abuse of Discretion</u>

### A.   <u>Evidentiary Issue</u>

Respondent argues that we should be limited to the administrative record in deciding whether the settlement officer abused his discretion.  At trial, respondent objected to the introduction of evidence offered by petitioner to prove an abuse of discretion where that evidence was not provided to the settlement officer.  The Court noted respondent's objection but allowed testimony to proceed.  On brief, however, respondent stated that the Court should consider the testimony of the

---

[8]  We note that at the time he filed the petition and as of the date of trial, we had not ruled whether in sec. 6330 cases taxpayers could challenge the existence or amount of a tax liability reported on their original return (as is the case herein).  In <u>Montgomery v. Commissioner</u>, 122 T.C. 1 (2004), we held that in sec. 6330 cases taxpayers can dispute tax liabilities reported on their original return.

settlement officer even though it is not part of the administrative record.

In Robinette v. Commissioner, 123 T.C. 85 (2004), we held that when reviewing the Commissioner's determination pursuant to section 6330 the evidence we may consider is not limited to the administrative record. For the reasons stated in Robinette, respondent's objection is overruled. Id.

B.    The Controversy Before The Court

Petitioner claims that the settlement officer's sustaining the nominee liens was an abuse of discretion. Petitioner argues that we should also review respondent's return/rejection of the OIC. Petitioner claims that the OIC was a collection alternative that was raised and considered during the hearing. Petitioner argues that respondent abused his discretion in his determination to "reject" the OIC by proceeding with collection while "reconsideration" of the OIC was pending.

Respondent contends that the only issue before us is the sustaining of the nominee liens, and petitioner lacks standing to challenge respondent's determination on this issue. Respondent claims that the settlement officer was assigned two separate requests for Appeals consideration: (1) The section 6330 hearing (regarding the nominee liens), and (2) the appeal of respondent's rejection of the OIC. Respondent asserts that the settlement officer's decision to return the OIC to Compliance for additional

research was separate and apart from the hearing and the Court does not have jurisdiction over this action. Respondent argues that although Compliance subsequently returned the OIC to petitioner, petitioner cannot contest the return of the OIC by Compliance because the Court does not have jurisdiction to review Compliance's "determination" to return the OIC. Respondent alternatively[9] contends that the issue before the Court is whether the settlement officer abused his discretion in returning the OIC to Compliance.

As discussed below, we conclude that we can review respondent's determination regarding the OIC; i.e., to leave the nominee liens in place, and essentially reject the OIC, while the OIC was supposed to be investigated further.

C. Petitioner Raised the OIC as a Collection Alternative

Respondent admits that at the hearing petitioner proposed consideration of the OIC, and petitioner submitted additional information to support the OIC. Mr. Blais, the settlement officer who conducted the hearing, testified that the focus of the hearing was whether petitioner's case could be settled through an OIC.

We conclude that pursuant to section 6330(c)(2)(A)(iii) petitioner raised the OIC as a collection alternative at the

_____

[9] Although respondent did not do so, we characterize this as an alternative argument.

hearing. Accordingly, we conclude that respondent's determination included consideration of this issue.[10] Sec. 6330(c)(3)(B) (the determination shall take into consideration the issues raised under section 6330(c)(2)--which includes offers of collection alternatives including OICs). Accordingly, we shall review whether respondent's determination regarding the OIC was arbitrary, capricious, or without sound basis in fact and law. Fowler v. Commissioner, T.C. Memo. 2004-163; see Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

D.    Did Respondent Abuse His Discretion Regarding the OIC?

1.    The OIC Was Not Fully Investigated

Petitioner claims that the OIC was not fully investigated before it was essentially rejected. We agree. Mr. Blais admitted that the OIC needed further investigation before a decision on the OIC could be made because of its complexity and the lack of sufficient information to evaluate the OIC. Mr. Blais, in fact, returned the OIC for further investigation. Respondent, however, determined to leave the nominee liens in place before the further investigation of the OIC was completed.

---

[10] If respondent's determination did not include consideration of this issue, respondent would have abused his discretion by failing to follow the express provisions of sec. 6330 which require respondent to consider all issues raised at the hearing, including collection alternatives such as OICs, in making his determination.

### 2. Respondent Did Not Base His Determination on Petitioner's Ability To Pay

Petitioner is disabled and has a limited life expectancy. Respondent determined to leave the nominee liens in place when Mr. Blais indicated that in a best case scenario resolution of petitioner's case for a figure of more than $80,000 was unreasonable. Respondent made this determination regarding the nominee liens even though Mr. Blais specifically noted--before and after the hearing--that settlement for less than $80,000 was the best option.

Respondent's determination was not based on a financial analysis of petitioner's income, assets, and allowable expenses and his ability to pay. See Schulman v. Commissioner, T.C. Memo. 2002-129. Respondent did not give due consideration to collection alternatives. See id.

### 3. Conclusion

For the reasons stated supra, we conclude that the determination to leave the nominee liens in place for the years in issue was an abuse of discretion.[11] In reaching all of our

_____

[11] As we hold that respondent abused his discretion in determining that the OIC was not an acceptable collection alternative, we need not reach the issue of whether petitioner has standing to challenge the filing of the nominee liens. We note that the decision of the District Court in Skrizowski v. Commissioner, 292 F. Supp.2d 277 (D.N.H. 2003), regarding the nominee liens and the responsible person penalty, is not a final decision (it is currently on appeal to the U.S. Court of Appeals for the First Circuit). See Johnston v. Commissioner, 119 T.C.

(continued...)

holdings herein, we have considered all arguments made by the parties, and to the extent not mentioned above, we find them to be irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for petitioner</u>.

---

¹¹(...continued)

27 (2002); <u>Toney v. Commissioner</u>, T.C. Memo. 2003-333; <u>Strong v. Commissioner</u>, T.C. Memo. 2001-103. Additionally, unlike in the case at bar, petitioner did not raise the issue of the OIC/collection alternatives in the complaint in the District Court case. <u>Skrizowski v. Commissioner</u>, <u>supra</u> at 279, 281 ("The sole remedy sought in the complaint in this action is an order to release these liens on real estate of third parties."). Furthermore, respondent does not contend that petitioner lacks standing regarding the OIC/collection alternative issue.